# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KURT KUSHNER, | : |
| | : Case No. 2:18-cv-01020 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Vascura |
| NATIONWIDE MUTUAL INSURANCE | : |
| COMPANY, et al., | : |
| | : |
| Defendants. | : |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiff and Defendants' Cross-Motions for Summary Judgment. (Docs. 18 & 19.) The Motions are fully briefed, and the Court will resolve each of them without oral argument. For the reasons set forth below, the Court **GRANTS** Defendants' Motion [#19] and **DENIES** Plaintiff's Motion [#18].

### II. BACKGROUND

#### A. Related Lawsuit

Plaintiff has a related lawsuit pending before this Court that provides relevant background to the claims at issue here. (*See Kushner v. Nationwide Mutual Insurance Co., et al.*, 17-cv-00715.) The Court draws largely from its September 26, 2019 Summary Judgment Opinion and Order to set forth the facts in that case. (*See* 17-cv-00715, Doc. 59.)

From July 1, 1998 through February 17, 2003, Plaintiff Kurt Kushner worked as an independent contractor who sold products for Defendant Nationwide Mutual Insurance Company ("Nationwide"), including property and casualty insurance, life insurance, annuities, and mutual

1

funds. On February 17, 2003, Nationwide hired Plaintiff as an employee, giving him the title of Territory Sales Director. In this new role, Plaintiff participated in the Nationwide Retirement Plan ("NRP"). Plaintiff did not participate in the NRP prior to this time.

In 2002, Nationwide went through a change, whereby recordkeeping for the NRP was moved from an internal system to Aon Hewitt, a third party. To that end, Nationwide sent Aon Hewitt bi-weekly data feeds from its human resources system, which contained information such as employees' date of hire, date of birth, and salary. Aon Hewitt, in turn, used this information to determine eligibility and calculate benefits under the NRP, as well as to prepare benefits estimates. When Nationwide sent Aon Hewitt Plaintiff's HR information, Plaintiff's hire date was erroneously recorded as July 1, 1998, the date he began working as an independent contractor, as opposed to February 17, 2003, the date he began working as a Nationwide employee. It is unclear who or what at Nationwide was responsible for this transmission error, but consequently, Aon Hewitt miscalculated Plaintiff's benefits amount under the NRP, showing he was entitled to a much higher sum than was the reality.

In early 2004, Nationwide sent Plaintiff a Total Rewards Statement. The Statement noted Plaintiff's correct hire date, February 17, 2003, and provided that Plaintiff had an estimated accrued monthly benefit of $620, which would be paid out upon his retirement. In addition, the Statement specified that Plaintiff was 100% vested in his accrued benefit. After receiving this Statement, Plaintiff called Nationwide's Associate Service Center to confirm that he was 100% vested in the NRP. The representative he spoke with responded affirmatively, stating that the NRP recognized Plaintiff's years of service as an independent contractor. This, however, was incorrect.

For the next ten years, Plaintiff continued to receive annual Rewards Statements. Those Statements provided the following estimates:

| Statement Date | Estimated Accrued Monthly Benefit Payable Upon Retirement |
|:---:|:---:|
| 2004/2005 | $1,017 |
| 2005/2006 | $1,169 |
| 2006/2007 | $1,535 |
| 2007/2008 | $1,802 |
| 2008/2009 | $2,264 |
| 2009/2010 | $2,684 |
| 2010/2011 | $3,203 |
| 2011/2012 | $3,520 |
| 2012/2013 | $3,852 |
| 2013/2014 | $4,129 |

Based on these representations, Plaintiff opted to support his children's college funding without having them take on any debt and he also passed up a job opportunity that would have provided him with more money.

In 2014, Nationwide transferred recordkeeping for the NRP from Aon Hewitt to Fidelity. It was during this transition that Nationwide discovered that Aon Hewitt had been using Plaintiff's incorrect hire date for its benefits calculations. Once corrected, it was determined that, as of November 2014, Plaintiff was only entitled to receive $1,327 per month upon retirement, rather than the $4,129 per month reflected in his most recent Rewards Statement. Plaintiff subsequently filed a claim with Nationwide's Administrative Committee, also named as a Defendant in this case, for the benefits promised in his Rewards Statements. The Administrative Committee denied Plaintiff's claim in a letter dated May 26, 2015.

While the dispute surrounding Plaintiff's retirement benefits was ongoing, Defendants assert that Plaintiff's performance at work began to decline. According to Defendants, Plaintiff had underperformed in three categories of sales during the first six months of 2013. For that sales period, he received a performance rating of 3, or "good." Plaintiff continued to underperform in several sales categories in 2014, again receiving a performance rating of 3. Then, in 2015, Plaintiff's performance rating dropped to 2, or "inconsistent," after he met only 64.1% of his sales goals for a particular product. This prompted Nationwide to implement performance coaching for Plaintiff in August 2016. Plaintiff, however, still failed to meet his sales objectives for that year. Nationwide eventually placed Plaintiff on final written notice in 2017, warning him that if he failed to meet expectations, his employment might be terminated. Plaintiff did meet the goals set out in his final written notice.

In September 2017, Nationwide underwent a Reduction in Force ("RIF"), whereby Plaintiff, along with nine other Territory Sales Directors were ultimately selected for termination. This was roughly one month after Plaintiff filed a federal lawsuit against Defendants. Accordingly, Plaintiff brought two claims against Defendants. First, Plaintiff alleged that Defendants violated ERISA § 502(a)(3) by breaching their fiduciary duty to furnish accurate employee benefits information. Second, Plaintiff alleged that Defendants violated ERISA § 510 by retaliating against him for engaging in protected conduct. The Court dismissed this second claim at the summary judgment stage.

### B. Present Lawsuit

Following Plaintiff's termination, Nationwide offered a severance payment of $49,067.31, contingent upon Plaintiff signing a standard Severance Payment and Release Agreement. Under the Nationwide Severance Plan, an employee is eligible for severance pay when:

> 1) Your employment relationship with all Participating Employers and Non-Participating Employers ends due solely to an Involuntary Termination due to Job Elimination; and
>
> 2) You have signed a Severance Payment and Release Agreement within the timeframe communicated by the Plan Administrator.

(Doc. 18-1 at 42.) A Severance Payment and Release Agreement under the Nationwide Plan is defined as "an agreement between the Associate and the Plan Sponsor that resolves and settles all possible disputes and claims pertaining to or arising from the Associate's employment and discontinuation of employment from the Plan Sponsor and all other Companies." (*Id.* at 51.) When Plaintiff received Defendants' Severance Payment and Release Agreement, he made several written changes in an effort to preserve his ability to bring the challenges set forth in his related federal lawsuit. (*Id.* at 21.) Plaintiff then signed the amended Agreement and returned it to Defendants. On December 21, 2017, Plaintiff's attorney received an email that read: "Tybe, following up on our telephone call, Nationwide will not accept any edits by Mr. Kushner to its severance and release agreement. Thanks." (Doc. 18-5.)

On January 8, 2018, Plaintiff filed for severance pay under the Nationwide Severance Plan. The Administrative Committee placed Plaintiff's claim on the agenda for its February 7, 2018 meeting. In a letter dated February 7, 2018, the Administrative Committee denied Plaintiff's claim, finding:

> The Committee determined that the document you provided, which excluded the lawsuit you filed against Nationwide Mutual Insurance Company, did not satisfy the definition of Severance Payment and Release Agreement cited above.

(Doc. 18-1 at 15.) Plaintiff appealed this decision, which was also denied by letter on May 8, 2018:

> In numbered paragraph 4, the severance payment and release agreement you submitted excluded the lawsuit you filed against Nationwide Mutual Insurance Co. In addition, you excluded in paragraph 5 a claim for "promissory estoppel (promises on which Employee relied)." The Committee determined that the document you provided did not resolve and settle all possible disputes and claims pertaining to arising from your employment and discontinuation of your employment from Nationwide. Therefore, you were not eligible for Severance Pay.

(*Id.* at 35.) Following this denial, Plaintiff filed the present action on September 7, 2018 seeking administrative review of the Committee's decision.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court may grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991)). Ultimately, the court must evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.

### IV. ANALYSIS

Plaintiff and Defendants each move for summary judgment on a singular question: Did the Administrative Committee appropriately interpret Nationwide's Severance Plan in denying Plaintiff's claim for severance pay?

## A. Proper Standard of Review

As an initial matter, the parties disagree over the appropriate standard to apply when reviewing the Administrative Committee's decision. Plaintiff argues that the Court should apply de novo review, whereas Defendants maintain that the Court should apply the arbitrary and capricious standard.

The Sixth Circuit has instructed that a plan administrator's denial-of-benefits decision is ordinarily reviewed de novo. *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 264 (6th Cir. 2018). If, however, the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts review such decisions under the arbitrary and capricious standard. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989)).

Here, Plaintiff concedes that the Nationwide Severance Plan vests the Administrative Committee with the discretion to interpret the Plan, and that its interpretation is final and binding. (*See* Doc. 18-1 at 123.) But Plaintiff argues that the December 21, 2017 email from Nationwide's counsel indicating that Nationwide would not accept his edits to the Severance Payment and Release Agreement suggests that Nationwide, and not the Administrative Committee, made the decision to deny his claim for benefits. (*See* Doc. 18-5.) As such, Plaintiff contends that a deferential standard of review is not justified. *See Shelby Cty. Health Care Grp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009) ("Where a plan administrator does not make the benefits decision, the plan administrator has not exercised its discretionary authority, and therefore, a deferential standard of review is not justified.").

Notwithstanding the December 21, 2017 email, the record demonstrates that the Administrative Committee made the ultimate decision to deny Plaintiff's claim for severance pay.

7

Indeed, the Administrative Committee considered Plaintiff's claim independently during its February 7, 2018 meeting. (*See* Doc. 18-1 at 10: "Kurt Kushner, #361659, is requesting that the Plan accepts his Severance agreement with his written edits.") Subsequently, the Administrative Committee sent Plaintiff a letter stating it had reviewed his claim and setting forth the reasons for denying his claim based on its interpretation of the Severance Plan. (*See id.* at 15.) The Committee followed this same process during Plaintiff's appeal. (*See id.* at 35-36.) Hence, the Administrative Committee did not forfeit its discretionary authority over interpreting the Severance Payment Plan's provisions. Accordingly, the Court must apply the arbitrary and capricious standard in review of the Committee's decision.

### B. Whether the Administrative Committee's Decision was Arbitrary and Capricious

Plaintiff argues that even applying an arbitrary and capricious standard, the Administrative Committee erred in denying his claim for severance pay. The Court disagrees.

Review under the arbitrary and capricious standard is highly "deferential," and the Court must "uphold a benefit determination if it is rational in light of the plan's provisions." *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)) (internal quotations omitted). In other words, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Still, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Clemons*, 890 F.3d at 264 (quoting *Firestone*, 489 U.S. at 115); *see Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) ("When the same entity determines eligibility for benefits and also pays those benefits

out of its own pocket, an inherent conflict of interest arises. In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits.").

Here, it is undisputed that in order to qualify for severance pay, Plaintiff was required to sign a Severance Payment and Release Agreement. (*See* Doc. 18-1 at 42.) A Severance Payment and Release Agreement is defined as "an agreement between the Associate and the Plan Sponsor that *resolves and settles all possible disputes and claims* pertaining to or arising from the Associate's employment and discontinuation of employment from the Plan Sponsor and all other Companies." (*Id.* at 51.) Because Plaintiff altered his Release Agreement to ensure he preserved his right to sue Defendants in federal court challenging the amount of money he stood to receive under the Nationwide Retirement Plan, and because the Committee understood that lawsuit as a dispute and/or claim pertaining to Plaintiff's employment, the Committee rejected Plaintiff's proposed Agreement and concluded that he was not eligible for severance pay. The Court finds that the Administrative Committee's justification for denying Plaintiff's claim was reasonable.

Moreover, any conflict the Administrative Committee may have had as the subject of Plaintiff's lawsuit, or as the body responsible for both determining eligibility for and paying benefits, does not lead the Court to believe it abused its discretion in denying Plaintiff's claim for severance pay. To the contrary, it was objectively reasonable to conclude that a lawsuit challenging the amount of pay Plaintiff accrued stemming from his years working at Nationwide is dispute pertaining to his employment at the Company. Accordingly, the Administrative Committee's decision to deny Plaintiff's claim for severance pay was not arbitrary or capricious.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Summary Judgment [#19] and **DENIES** Plaintiff's Motion for Summary Judgment [#18]. This resolves all issues in this case. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                           /s/ Algenon L. Marbley
                                           **ALGENON L. MARBLEY**
                                           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 13, 2020**